**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| DAVID P. JOHNSON, ) | |
| ) | |
|     Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | Case No. 2:03cv490-FtM-99DNF |
| ) | Judge Thomas A. Wiseman, Jr. |
| WILLIAM ELROD CLARK, ) | |
| ) | |
|     Defendant/Counter-Plaintiff. ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff/Counter-Defendant David P. Johnson's Motion for Summary Judgment Based on Settlement and Release (Doc. No. 407), filed on November 8, 2006, seeking dismissal of Defendant/Counter-Plaintiff William Elrod Clark's Counter-Complaint.[1] The motion has been fully briefed and is ripe for consideration. (*See* Def.'s Response in Opposition (Doc. No. 415), and Pl.'s Reply Brief (Doc. No. 419).) Also before the Court is Defendant/Counter-Plaintiff Clark's Cross Motion for Summary Judgment (Doc. No. 410), in which Clark seeks dismissal of Johnson's Second Amended Complaint. Johnson having filed his response in opposition thereto (Doc. No. 418), that motion is also ripe for consideration.

Johnson's motion for summary judgment seeks dismissal of all three counts of Clark's Counter-Complaint: Breach of Fiduciary Duty (Count I), Professional Malpractice (Count II), and Professional Negligence (Count III) (collectively, the "counterclaims"). The counterclaims all relate to Johnson's administration of the estate of Johnie Vaden Elrod (the "Elrod Estate") in his capacity as Personal Representative thereof. Johnson asserts that Clark's counterclaims are barred by the Mediation Agreement entered into between Johnson and Trustee Byron Elrod Shinn, the resulting Order of Dismissal entered by the Probate Court for Charlotte County, Florida approving the settlement reflected in the Mediation Agreement, and the release agreement executed by Shinn in Shinn's capacity as Trustee of the Elrod Estate. Clark opposes Johnson's motion for summary judgment but, in the alternative, asserts in his cross-motion

---

[1] Johnson's motion for summary judgment was originally filed as an attachment to a Motion for Leave to File on September 13, 2006 (Doc. No. 394-2). Pursuant to this Court's Order on November 8, 2006 granting Johnson motion for leave to file his motion for summary judgment, the present motion was accepted as filed on November 8, 2006 and recorded as Docket Number 407.

for summary judgment that if his claims against Johnson are barred, then Johnson's defamation claims against him are likewise barred.

Notwithstanding that argument, for the reasons set forth below, the Court finds that Clark's counterclaims are barred by the doctrine of virtual representation.  Plaintiff/Counter-Defendant Johnson's Motion for Summary Judgment must therefore be granted, and the three counterclaims against him dismissed.  Clark's Cross Motion for Summary Judgment must, however, be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Johnie Vaden Elrod died in 1997.  His Last Will and Testament left the assets of his substantial estate to a trust (the "Testamentary Trust") for the benefit of the four children of his two deceased siblings.  Clark is one of Elrod's nephews and a one-quarter beneficiary of the Testamentary Trust.

Elrod had lived in Virginia up until 1984 when he moved to Florida.  After Elrod moved to Florida, his friend and business partner Robert J. Davis managed Elrod's property in Virginia.  At the time of his death, Elrod owned real property worth tens of millions of dollars in both Virginia and Florida.  Upon Elrod's death, Davis claimed to be an executor and Personal Representative of Elrod's will and Estate.  He was subsequently appointed to serve as Trustee of the Testamentary Trust but was ineligible to serve as Personal Representative in the Florida probate proceedings because he was not a Florida resident.

On October 22, 1997, Davis executed a petition for the administration of the Elrod Estate.  Davis petitioned the Charlotte County, Florida Probate Court to appoint his own attorney, Johnson, as Personal Representative of the Elrod Estate.  On November 7, 1997 Johnson was appointed "Co-Ancillary Administrator" in Virginia and the "Personal Representative of the Estate" in Florida.  In 1998, Clark and the other beneficiaries of the estate jointly petitioned the Probate Court to remove Johnson as the Personal Representative "due to his mismanagement and negligence in connection with the Estate's administration." (Doc. 391, at 2.)  In 1999 Clark and the other beneficiaries filed an Amended and Supplemental Petition for Removal and on May 3, 2000 Clark filed another Amended Petition for Removal of Personal Representative. (Doc. No. 410-2, Ex. C.)  The last petition Clark filed to remove Johnson as Personal Representative was the Third Amended and Supplemental Petition for Removal filed on March 25, 2002.  (Doc. No. 410-2, Ex. D.)

After Davis died in 2001, Byron Elrod Shinn was appointed as Trustee of the Trust.  In October 2003

Shinn, as the Trustee on behalf of the Trust, filed his own petition to remove Johnson as Personal Representative. In October 2004, Shinn filed an Amended Petition for Removal incorporating by reference all of the claims in Clark's Third Amended and Supplemental Petition for Removal and seeking damages or surcharges for the claims. (Doc. No. 410-2, at ¶ 6, Ex. F.) Shinn's petition and amended petition were filed in the same case as the other petitions and amended or supplemental petitions to remove Johnson as Personal Representative, File No. 97-1115-PR, in the circuit Court of the Twentieth Judicial Circuit for Charlotte County, Florida, Probate Division. Johnson denied the existence of grounds for his removal and actively opposed the efforts to remove him as Personal Representative.

On July 15, 2003, while the removal action was pending in the Probate Court, Johnson filed his defamation action against Clark in the Twentieth Judicial Circuit, Charlotte County, Florida. The action was removed to federal court. (Doc. Nos. 1 & 2.) Clark filed his first Answer and Affirmative Defenses in March 2004 and an Amended Answer on May 16, 2006. He filed his counterclaims in June 2004, asserting claims all related to Johnson's administration of the Elrod Estate.

Back in Probate Court, in 2005, Shinn and Johnson entered into mediation regarding the Testamentary Trust's claims against Johnson. Clark and the other Trust beneficiaries participated in this mediation. (Doc. 410-2, Clark Aff. at ¶ 8.) On March 4, 2005, Johnson and Shinn entered into a Mediation Agreement that was expressly "intended to settle with finality all claims between the Trustee and PR [Personal Representative] in Florida and Virginia." (Doc. No. 410-2.) The Mediation Agreement specifically covered the claims in Shinn's Petition for removal of Johnson on behalf of the Trust, seeking damages or surcharge for all of the same acts that are the subject of Clark's counterclaims against Johnson in this action, including failure to pursue claims, failure to sell real estate at sufficient prices, causing excessive taxes and interest, and for suing Clark, a beneficiary of the Trust, for defamation in the present case. (Doc. No. 407, at 2.) In addition, the Mediation Agreement also resolved Johnson's claims for additional compensation for his prior work for the Elrod Estate from the remaining Estate funds.

Pursuant to the Mediation Agreement, among other things, Johnson agreed to resign as the Personal Representative in exchange for receiving a final payment of $175,000, with Shinn replacing Johnson as the Personal Representative. According to Clark, "[a]t no time during the mediation did anyone ever indicate that

claims against Johnson would be dismissed, that Johnson would be pardoned, or that Johnson's claims against me would be dismissed." (Doc. No. 410-2, at ¶ 8.) Notwithstanding, the Mediation Agreement did provide for the execution of mutual general releases, as follows:

> The Trustee [Shinn] and [Personal Representative ("PR"), Johnson], shall exchange mutual general releases, that shall be in a form generally recognized by the Twentieth Judicial Circuit and shall be executed and delivered contemporaneously with the payment to the PR under this Agreement. The releases shall include all attorney, accountants and other professionals of the PR and Trustee.

(Doc. No. 410, Ex. 1(H), ¶ 4.) Johnson signed the Mediation Agreement in both his individual capacity and his capacity as Personal Representative; Shinn signed in his capacity as Trustee, representing the best interests of the Testamentary Trust. There is no doubt that Clark never expressly authorized Shinn to settle his individual claims against Johnson, nor did the Mediation Agreement specifically reference any of Clark's individual claims against Johnson, which have been pending in this Court since June 2004. The Mediation Agreement did, however, cover the exact same acts that are the basis for Clark's counterclaims.

Following the mediation, the parties filed a Joint Motion to Approve Mediation Agreement (the "Joint Motion") with the Circuit Court of Charlotte County, Florida, Probate Division. The Joint Motion provided that upon approval of the Mediation Agreement by the courts in Virginia and Florida, "the parties will exchange full general releases in a form and in favor of those persons agreed at mediation." (Doc. No. 410, Ex. 1(J), ¶ 9.) The Joint Motion was served on all of the Trust beneficiaries and each was specifically advised that any person with an interest in the Estate or Settlement who "object[ed] to the approval of this settlement [must present their objections] at the hearing separately noticed for this purpose." (Doc. 407, at 3.) At the hearing to approve the settlement, Clark objected to the Mediation Agreement both orally and in writing. The Probate Court nonetheless entered an Order approving the Mediation Agreement and, after Clark appealed, the Second District Court of Appeal affirmed the Probate Court's Order approving the Mediation Agreement.

On January 6, 2006, Shinn, this time not as not only the " Testamentary Trustee of the Johnie V. Elrod Testamentary Trust," but also having replaced Johnson as Personal Representative of the Elrod Estate, executed a General Release in which he released Johnson from any and all claims against Johnson, "including, but not limited to, any and all claims made or that could have been made in the Estate of Johnie V. Elrod, File No. 97-1115 PR, in and for Charlotte County, Florida." (Doc. No. 410, Ex. 6.) Similarly, on

January 19, 2006, Johnson executed a General Release in which he released Shinn, as Trustee, from any and all claims that Johnson

> ever had, now has, or which any personal representative, successor, heir or assign of [Johnson], hereafter can, shall or may have, against [Shinn] . . . including, but not limited to, any and all claims made or that could have been made in the Estate of Johnie V. Elrod.

(Doc. No. 410, Ex. 7.)  Johnson's release also provided specifically , however, that he "expressly release[d] no claims that he may have against William Clark." (*Id.*)  The Trustee's release was not delivered to Johnson until August 14, 2006.  Johnson sought permission to file his motion for summary judgment shortly thereafter.

The Elrod Estate is being probated in Florida Circuit Court in Charlotte County, Florida, with an ancillary administration in Virginia because the decedent owned property there.  According to Johnson, the Probate Court in Virginia has approved the Mediation Agreement, but has reserved discharging him as "Co-Ancillary Administrator" there until the final accountings are approved.  (Doc. No. 407, at 3.)

## II.    STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." *Branche v. Airtan Airways, Inc.*, 342 F.3d 1248, 1252–53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  In determining whether summary judgment is appropriate for either party herein, the Court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in favor of the party opposing the motion. *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. v. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  The court must consider each motion on its own merits,

resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

### III.    DISCUSSION

#### A.    Johnson's Motion for Summary Judgment of Clark's Counterclaims

In the present case, the facts concerning Johnson's motion are generally not in dispute; rather the parties' disagreement centers on the legal consequences that flow from the facts of the case. This motion presents a single legal issue to be decided by the Court: whether the counterclaims filed by Clark, a one-quarter beneficiary of the Testamentary Trust that was itself a beneficiary of the Elrod Estate, are barred by Section 731.303, Florida Statutes (the "Virtual Representation Statute") and/or under Florida common law and the Order approving the Mediation Agreement that discharged Johnson as Personal Representative and terminated all litigation between Johnson and the Trust.[2] To resolve this issue the Court need only answer two questions: (1) whether Clark's counterclaims are derived from Clark's status as a beneficiary of the Testamentary Trust and are therefore subsumed within the claims of the Trust and the Elrod Estate that were settled and dismissed by the Mediation Agreement and/or the Order approving the settlement; and (2) whether Clark is entitled to maintain a claim for attorney's fees.

In reaching its conclusion as to these issues, the Court will first outline the doctrine of virtual representation as it has been codified in Florida, and will then address each of Clark's arguments as to why the doctrine should not apply to bar his counterclaims in this action.

---

[2]As indicated above, Johnson asserts that the probate court in Virginia has also approved the Mediation Agreement but has reserved discharging Johnson as "Co-Ancillary Administrator" until the final accountings are approved. (Doc. No. 407, at ¶ 4.) However, Johnson claims that "[t]he Counter-Complaint in this action does not allege that any breaches of duty by Mr. Johnson were committed in his capacity of Co-Ancillary Administrator of Virginia." (*Id.*) In response, Clark contends that several of his grievances against Johnson relate to Johnson's actions relative to valuable real estate in Virginia. (Doc. No. 415, n. 4.) Despite Clark's contention, Clark has not set forth any argument that the counterclaims at issue are governed by any law other than Florida law or that Johnson's position as Co-Ancillary Administrator is in any way relevant to the Court's analysis of Clark's counterclaims in the case at bar.

**1.      The Effect of the Virtual Representation Statute**

The doctrine of virtual representation provides that "[a] person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." Restatement (Second) of Judgments § 41(1). Further, it is well-settled that in cases involving claims by a trustee and individual beneficiaries, a trustee, in his representative capacity, acts on behalf of the trust representing the interests of the trust and its beneficiaries; a beneficiary is therefore bound by a *judgment* properly obtained by a trustee acting in his representative capacity. *See* § 737.402(t), Florida Statutes (2006); Restatement (Second) of Judgments § 41(1)(a) ("A person is represented by a party who is the trustee of an estate or interest of which the person is a beneficiary . . . ."). In Florida, the doctrine of virtual representation has been codified as follows:

> In the administration of or in judicial proceedings involving estates of decedents or trusts, the following apply:
>
> (1) Persons are bound by orders binding others in the following cases:
>
> . . . .
>
> (b) To the extent there is no conflict of interest between them or among the persons represented:
>
> > . . . .
> >
> > 2. Orders binding a trustee bind beneficiaries of the trust in proceedings to probate a will, in establishing or adding to a trust, in reviewing the acts or accounts of a prior fiduciary, and in proceedings involving creditors or other third parties. However, for purposes of this section, a conflict of interest shall be deemed to exist when each trustee of a trust that is a beneficiary of the estate is also a Personal Representative of the estate.
> >
> > . . . .
>
> (3) In proceedings involving the administration of estates or trusts, notice is required as follows:
>
> (a) Notice as prescribed by law shall be given to every interested person, or to one who can bind the interested person as described in paragraph (1)(a) or paragraph (1)(b). Notice may be given both to the interested person and to another who can bind him or her . . . .

Fla. Stat. § 731.303 (2006).

In light of this statute, Johnson argues that all of Clark's counterclaims, premised solely upon Johnson's alleged breaches of duty and derived from Clark's status as a beneficiary of the Testamentary

7

Trust, are subsumed within the claims of the Trust and the Elrod Estate, and are barred by the Virtual Representation Statute and the Probate Court's Order approving the Mediation Agreement. According to Johnson, Shinn, as the Trustee, was clearly empowered to settle claims on behalf of the Testamentary Trust and, because all of Clark's claims were included in the Trustee's claims, the Virtual Representation Statute applies to bar Clark's counterclaims.

Johnson contends that the Florida Virtual Representation Statute requires only two things: (1) that an interested party be given notice and an opportunity to be heard regarding their opposition to the trustee's actions, and (2) that there be no conflict of interest between the Trustee and Personal Representative. The parties agree that Clark, as a beneficiary, qualifies as an interested person. According to Johnson, the statutory requirements were squarely satisfied because Clark received notice of, and attended, the Probate Court hearing in which it approved the Mediation Agreement and there was no conflict of interest at the time the court approved the settlement.

In his response in opposition to summary judgment, Clark does not dispute the fact that he received notice of the Trustee's actions or that he had an opportunity to be heard both at the mediation and in the court proceedings regarding the Mediation Agreement. In arguing that his claims should not be barred, Clark does not explain specifically why or how the Virtual Representation Statute should not apply to the facts of the present case.[3] Instead, Clark's response attempts to circumvent the plain language of the statute by focusing Court's attention on the undisputed fact that Clark objected to the Mediation Agreement during the mediation, before the Probate Court who reviewed the Mediation Agreement and again in his appeal of the Order approving it. Specifically, Clark argues that (1) his claims are not derivative; (2) he cannot be bound by a Mediation Agreement he did not sign, to which he did not agree, and which did not refer specifically to Clark's individual claims against Johnson; (3) he cannot be bound by an Order approving a Mediation Agreement where there are significant conflicts of interest between Shinn, Clark and the Trust beneficiaries, and which

---

[3]Surprisingly, Clark's response to Johnson's contention that the Florida Virtual Representation Statute is applicable to the facts of this case and thereby bars his counterclaims is limited to a footnote explaining that his Motion in Limine "[s]ets forth an argument that the common law precludes the application in this case of the doctrine of virtual representation," and he "will not re-argue those points herein, other than to make clear his position that the doctrine of virtual representation is neither applicable as a matter of Florida statute nor as a matter of common law due to the circumstances to this case." (Doc. No. 415, at n.9.)

Order makes no reference to dismissing Clark's individual claims against Johnson; and (4) he cannot be bound by a Release executed by Shinn in both his capacity as Personal Representative and Trustee, which represents a conflict of interest under applicable Florida law. (Doc. No. 415, at 7.)

As set forth below, the Court finds that all of Clark's arguments are unavailing.

### (a) Clark's counterclaims are derivative of the Trustee's claims against Johnson.

Rather than disputing the fact that the Mediation Agreement with Johnson covered – and resolved – the exact same claims as those set forth in his Counter-Complaint, Clark presents what is essentially an equitable argument: Clark apparently contends that his claims are somehow personal to him and it is just not fair that they should be subsumed within the claims Shinn made on behalf of the Testamentary Trust and its beneficiaries against Johnson in the probate proceeding. Clark has not, however, pointed to a single claim in his Counter-Complaint that was not raised in the probate proceedings, nor has he suggested how his claimed damages are distinct from those of the other Trust beneficiaries. A review of Clark's counterclaims reveals that all except perhaps one claim – the alleged breach of fiduciary duty that began when Johnson sued Clark individually for defamation in the case at bar – stem from Johnson's alleged shortcomings as Personal Representative and attorney for the Elrod Estate, which allegedly caused damage to the Testamentary Trust and, in turn, resulted in damages to all of the beneficiaries by reducing the value of their respective interests in the Trust.

Moreover, even with respect to Clark's claim that Johnson's suit for defamation violated Johnson's fiduciary duty and caused Clark damage personally, it is undisputed that Shinn's Third Petition for Removal of Johnson, which incorporated all of Clark's counterclaims against Johnson, specifically set forth a claim that Johnson should no longer serve as fiduciary for the trust due to the irreconcilable conflict of interest between Johnson and Clark created by Johnson's lawsuit against Clark. (Doc. No. 410-3, at 23-24.) Consequently, it is clear that Clark's claim against Johnson for breach of fiduciary duty based on the case at bar, like his other claims, was settled by Shinn in the Mediation Agreement and is now foreclosed as a matter of law. In sum, Clark's counterclaims are plainly derivative of any claims owned by the Trust or the Estate and are not separate claims personal only to Clark. *Cf. Moore v. Am. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1246 (11th Cir. 2000) (in the ERISA context, recognizing a beneficiary's claim relating to a trust as "derivative"

in nature under traditional trust law).

### *(b)     Clark's Objection to the Mediation Agreement Is Irrelevant.*

In an additional effort to avoid application of the Virtual Representation Statute, Clark contends that Johnson must establish that he, as a beneficiary, assented to and signed the Trustee's Mediation Agreement in order to be bound, regardless of the terms of the Virtual Representation Statute. According to Clark, Johnson's "novel suggestion that Florida law providing an individual who does not sign a settlement cannot be bound thereby is somehow not applicable to probate proceedings where the beneficiary has been actively involved in the litigation," is not supported by the law. (Doc. No. 415, n. 7.) In support of this contention, Clark points to Florida cases involving the general law of issue or claim preclusion. Not only are these cases factually distinguishable, not one of the cases cited purports to construe the Florida statute at issue.[4] Moreover, the Court notes that Clark, in focusing his argument on his refusal to consent to the terms of the Mediation Agreement, fails to recognize that the Virtual Representation Statute does not apply to mere *agreements*. Instead, it applies to court *orders* entered after the parties receive direct notice and opportunity to be heard – requirements clearly met in the case at bar.

In sum, the plain language of the Florida Virtual Representation Statute provides that the trustee of an express trust has the power to settle claims on behalf of the trust, Fla. Stat. § 737.402(t), and that orders binding a trustee bind beneficiaries of a trust in proceedings reviewing the acts or accounts of a prior fiduciary, Fla. Stat. § 731.303. To hold that a beneficiary who simply objects to and refuses to sign a settlement agreement is not bound by the order approving a trustee's settlement on behalf of the trust would contravene the plain language and purpose of the Virtual Representation Statute. Clark's argument that he needed to sign or assent to the Mediation Agreement is therefore unavailing; his refusal to assent to the terms of the settlement does not affect the operation of the Virtual Representation Statute, which clearly bars his

---

[4] *See, e.g.*, *Sec. Prof'ls, Inc. v. Segall*, 685 So. 2d 1381, 1383 (Fla. 4th DCA 1997) (holding that stipulation of settlement did not bind defendant shareholder's counterclaim when there was no indication that the liability of either co-defendant was derivative or subsumed within the claims of the other parties to the offer); *Galligan v. Burgess*, 423 So. 2d 1037, 1038 (Fla. 4th DCA 1982) (holding that an insured could not be bound by a settlement unless the party seeking to enforce the settlement alleges and proves that the insured consented to or knew of the settlement negotiations); *Albert v. Hoffman Elect. Constr.*, 438 So. 2d 1015, 1016 (Fla. 4th DCA 1983) (an attorney cannot bind a client to a settlement without the client's approval or authority to settle the claim); *Goff v. Indian Lake Estates*, 178 So. 2d 910, 912 (a defendant is not bound by his attorney's unauthorized assent to settle plaintiff's claims for injunctive relief).

counterclaims to the extent they are covered by the Order approving the Mediation Agreement.

### (c) Absent an express reservation of rights in the Mediation Agreement or Order approving the settlement, the Trustee's settlement binds the beneficiary.

Clark next argues that because neither the Mediation Agreement nor the Order approving it expressly referenced his individual claims against Johnson, then they cannot be construed to bar his claims against Johnson. In response, Johnson points out that the Mediation Agreement was quite clear that it "intended to settle all claims between the Trustee and P.R. [Personal Representative] in Florida and Virginia," and since Trustee Shinn was authorized to act and settle claims on behalf of the Trust, there was no reason specifically to identify in the Mediation Agreement every existing or potential claim of any beneficiary that was foreclosed by the Agreement and the Order approving it. Further, Johnson argues, Clark fails to explain how or cite to any authority as to why Clark's counterclaims for breach of fiduciary duty, which are clearly derivative of the probate proceedings, must be specifically identified in order to be included in the Mediation Agreement.

Despite the plain language of the Virtual Representation Statute, Clark points to the case of *Weiss v. Courshon* in support of his argument that through his words and actions he has made it clear that he wished to pursue his counterclaims against Johnson and he should be able to proceed with his claims filed prior to the time the Trustee files its claims. (Doc. No. 415, at 10–11 (citing *Weiss*, 618 So. 2d 255, 258 (Fla. 3d DCA 1993).) *Weiss* involved a fact pattern with some similarity to the one at hand, yet the court there allowed the individual trust beneficiaries' claims against former trustees to proceed after the current trustee moved to dismiss an identical action. 618 So. 2d at 258. The court granted the motion and dismissed the entire case, over the objections of the individual beneficiaries who had previously been granted intervenor status in the trustee's suit and had not agreed to dismissal of their individual claims. *Id.*

The Florida District Court of Appeals reversed, holding that the intervenors had a right to continue to pursue their claims despite the dismissal of the trust's claims. *Id.* at 258. In reaching this holding, the court expressly relied on the beneficiaries' status as *intervenors. Id.* Further emphasizing the importance of the remaining claimants' intervenor status, the court distinguished its ruling from that in *Colucci v. Greenfield*, 547 So. 2d 224 (Fla. Dist. Ct. App. 1989), pointing out that the case before it, as opposed to *Colucci*, dealt with parties that had been granted intervenor status and therefore maintained particular rights to their claims.

*Weiss*, 618 So. 2d at 258.

Although *Weiss* has a similar fact pattern to that presented here, the one glaring and significant difference between the beneficiaries in *Weiss* and Clark in the present case – the fact that Clark never formally became an intervenor in the probate proceedings – dictates the different result here. While it is true that Clark objected to the Mediation Agreement and even appealed the court's order approving the settlement, Clark was not an intervenor to the trustee's claims and neither the Mediation Agreement nor the Order approving it expressly reserved his individual claims.[5] Moreover, as Johnson emphasizes, the Probate Court's dismissal order expressly called for the full release of all claims by the trust *and* its beneficiaries. Therefore, the Court finds that because there is no reservation of Clark's individual claims in the Mediation Agreement, the Mediation Agreement and the Order approving it bind Clark and preclude his derivative counterclaims.[6]

As discussed above, the Florida Virtual Representation Statute is clear: Because Clark was a beneficiary with notice of the dismissal hearing, Clark is bound by the Order dismissing the Trustee's claims and releasing Johnson. Although Florida law grants Clark an individual right to seek redress against a former trustee, the Florida statute also gives considerable weight to the actions of a trustee. In this case, the Trustee's decision to mediate and settle the exact claims also brought by Clark was made for the benefit of the Trust and its beneficiaries, including Clark. Based on a plain reading of the Florida statute, therefore, Clark is bound by the order and release.

---

[5]Clark claims that if he had been told during the mediation or in the Probate Court hearings that his counterclaims would be dismissed as a result of the Mediation Agreement, he "would have requested specifically that the probate court exclude [his] counterclaim against Johnson from any release or dismissal." (Doc. No. 415-2, ¶ 18.) Clark's arguments in appealing the Probate Court's Order clearly demonstrate, however, that he recognized the preclusive effect of the Order on his own claims. (Doc. No. 410-7, at 14.)

[6]Although the *Weiss* court did not specifically cite to it, Florida law provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention." Fla. R.Civ.P.1.230. "[T]he general rule [is] that it is too late to apply for intervention after final decree has been entered, though there are cases where in the interest of justice leave to intervene has been granted after final decree." *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956) (internal citations omitted) (holding that potential loss of intervenors' homes satisfied the interest of justice exception). Further, the Virtual Representation Statute represents a policy decision by the Florida legislature, which weighs heavily against the possibility that facts of this case would warrant a late grant of intervenor status, even if Clark had actually requested such status. *See id.*

### (d)  There Was No Conflict of Interest Preventing Application of the Virtual Representation Statute.

Finally, Clark contends that, even if the Virtual Representation Statute otherwise would apply to the facts of this case, which he denies, conflicts of interest "between or among" the Trustee and the beneficiaries render the doctrine of virtual representation inapplicable in this case. *See* Fla. Stat. § 731.303(1)(b) ("To the extent there is no conflict of interest between them or among the persons represented . . . [,] [o]rders binding a trustee bind beneficiaries of the trust in . . . reviewing the acts or accounts of a prior fiduciary."). Specifically, Clark asserts that there are conflicts of interest (1) between the Trustee Shinn and Clark; (2) among the beneficiaries represented by Shinn; and (3) created by the fact that Shinn was also the Personal Representative at the time he executed the release, *see* Fla. Stat. § 731.303(1)(b) ("[F]or purposes of this section, a conflict of interest shall be deemed to exist when each trustee of a trust that is a beneficiary of the estate is also a personal representative of the estate."). In a nutshell, Clark argues that Johnson's personal suit for defamation against Clark and Shinn's settlement of the Trust's claims and Johnson's claims against all of the beneficiaries except Clark created a conflict of interest "among the persons represented," thus rendering the Order non-binding on the Trust beneficiaries. Further, Clark contends that Johnson, as the party moving for summary judgment, has the burden to establish that there was no conflict of interest between Shinn and Clark, the trustee and beneficiary, and also no conflict among the beneficiaries purportedly represented by Shinn in reaching the Mediation Agreement with Johnson.

Although it is true that "when there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them," Restatement (Second) of Trusts § 183 (2006), Clark does not provide any legal support or cite to any Florida case law supporting his assertion that "the only way there could *not* be a conflict between Shinn and Clark, and also no conflict among Clark and the other beneficiaries relating to the dismissal of claims belonging to the trust (and, according to Johnson, claims belonging to the beneficiaries) would be if Johnson waived his claims against Clark – which Johnson argues he has not waived." (Doc. No. 415, at 14–15.) It is undisputed that the mediation of the Trust's claims against Johnson took place entirely within the context of the probate proceedings. The mediation and the subsequent court hearings dealt with Trust and Estate issues, in which all of the beneficiaries had an interest.

Clark's arguments notwithstanding, the Court is not aware of any authority that supports the

proposition that a separate personal dispute between him and Johnson, which is clearly unrelated to the Estate proceedings or the Trust, somehow creates a conflict of interest between him and his fellow beneficiaries. The only apparent basis for Clark's contention that there is a conflict of interest among the beneficiaries is his own discontent and his belief that the outcome here is unfair. Moreover, the fact that Clark participated in the mediation, argued before the court who approved the Mediation Agreement and objected to the Order in an appeal, but never once made the argument that the Trustee could not represent the Trust's interests because the beneficiaries had a conflict of interest between them, supports a finding that there is no conflict of interest among the beneficiaries. Clark's argument to the contrary is nothing more than a last-ditch effort to avoid the application of the Virtual Representation Statute.

Finally, Clark contends that when Shinn executed the Release pursuant to the Mediation Agreement and after entry of the Order approving the Agreement, he did so as both Trustee and Personal Representative, which constituted a statutory conflict of interest. In making this argument, Clark ignores the plain language of the statute, which addresses the binding effect of *orders*; it does not apply to *releases*. *See* Fla. Stat. § 731.303(1)(b). As Johnson points out, although the subsequent releases were signed by Shinn at a time when he served as both Trustee and Personal Representative, this conflict was not present at the time the Order approving the Mediation Agreement was entered. In fact, although the Order specifically provided for Johnson's discharge as Personal Representative, Shinn was not appointed as successor Personal Representative until after Shinn filed subsequent papers and obtained letters testamentary – in other words, sometime after the Probate Court issued the Order approving the Mediation Agreement.

The Court finds that despite Clark's many arguments to the contrary, there was no conflict of interest between Shinn and Clark or among the beneficiaries represented by Shinn, nor was the Trustee at the time of the Mediation Agreement and Order also acting as the Personal Representative.

Accordingly, the Court holds that the Virtual Representation Statute applies to the facts of the case at bar and the clear operation of the statute and Florida law mandates that the Order approving the Mediation Agreement bars Clark's counterclaims against Johnson.

### 2. Whether Clark is Otherwise Entitled to Recover Attorney's Fees.

The parties have expended a substantial amount of ink on the issue of whether Clark is entitled to

recover any of his attorney fees in this action. Clark has clarified that he "is only seeking attorneys' fees incurred in this proceeding" and that such fees would only be calculated and awarded to him at the conclusion of trial, assuming that he is the prevailing party. (Doc. No. 415, at 20.) The basis for Clark's claim for attorney's fees is § 733.609(1), Florida Statutes, which provides that a trust beneficiary who prevails in a claim for breach of fiduciary duty against an estate's personal representative may recover his costs, including attorney's fees. As discussed above, the Court finds that Clark is barred from pursuing his counterclaims in this action by the doctrine of virtual representation, as codified at § 731.303, Florida Statutes. Because Clark's counterclaims will be dismissed, he obviously will not be the prevailing party on those claims. Consequently, he will not be entitled to recover attorney's fees associated with his counterclaims.

### B.     Clark's Motion for Summary Judgment of Johnson's Defamation Claims

As indicated above, Clark strenuously opposes Johnson's motion for summary judgment, arguing that his individual claims against Johnson should not be barred by the doctrine of virtual representation. In the alternative, Clark has filed his own Cross Motion for Summary Judgment (Doc. No. 410) in which he argues that if the Mediation Agreement, Probate Court Order approving it, or the release signed by Shinn bars his counterclaims, then Johnson's defamation claims should likewise be barred. Clark points out that Johnson signed the Mediation Agreement in his individual as well as his representative capacity, that the Mediation Agreement was "broad and unlimited in scope" when it referenced the parties' intent to settle "all" claims, and it did not specifically reserve any claims by either Johnson or Clark. (*See* Doc. No. 410, at 8.) On that basis, Clark argues that Johnson's attempt to limit the scope of the release that he executed in January 2006 (which expressly reserved Johnson's ability to pursue his individual claims against Clark) violated the plain and unambiguous terms of the Mediation Agreement, which provided that "full general releases" would be exchanged. Thus, without reference to any case law in support of his argument, Clark insists that *either* "(1) both Johnson and Clark settled all claims, thereby barring both Johnson's instant defamation claims and Clark's counterclaims in this suit; or (2) neither Johnson nor Clark settled with each other," and both claims should therefore be permitted to go forward. (Doc. No. 410, at 10–11.)

Johnson, on the other hand, argues that Clark's motion must be denied on the grounds that: (1) Clark failed to set forth in his Affirmative Defenses any defense based on settlement and release or accord and

satisfaction, and in fact has never raised this argument in any pleading prior to filing his motion for summary judgment, such that he has waived this defense; (2) the express language of the General Release executed by Johnson unambiguously preserved Johnson's claims against Clark, was accepted by Shinn as being in accordance with the Mediation Agreement, and did not conflict with the Mediation Agreement since the clear intent thereof was to settle the claims having to do with the administration of the Elrod Estate; and (3) Clark has admitted that Johnson's defamation case was never addressed or discussed at the mediation of the estate claims.

The Court agrees that Clark's motion must be denied. First, while Trustee Shinn had the ability, in his representative capacity, to release all claims by all beneficiaries brought against Johnson related to the alleged mismanagement of the Elrod Estate and the Testamentary Trust, only those claims brought within the probate context were within Shinn's purview. It therefore makes no sense to read into the Mediation Agreement an intent to settle claims against any individual beneficiaries outside the probate context.

Second, Clark's argument that the specific language of the General Release executed by Johnson conflicts with the language of the Mediation Agreement is likewise unavailing. The Florida Supreme Court has recognized that "there are no 'standard' general releases; all are unique. The fact that a proposed release is described as being 'general' is virtually meaningless. [I]t would be essential to know what is being released, who is being released, and any conditions or terms of the release." *Swartzel v. Publix Super Markets, Inc.*, 882 So. 2d 449, 453 (Fla. 4th DCA 2004). In other words, the covenant to execute "mutual general releases" as set forth in the Mediation Agreement essentially had no meaning until the actual general releases were executed and, in any event, the covenant can only be understood in the context of the mediation itself – at which no mention of Johnson's individual claims was made – and the terms of the Mediation Agreement as a whole, which clearly contemplated final resolution of all litigation involving the *Estate*. The general language of the Mediation Agreement regarding the releases is therefore not contradicted by the terms of the actual releases executed by Shinn and Johnson, in which Johnson expressly reserved his individual defamation claims against Clark. In fact, because Johnson's claims were unrelated to the actual administration of the Estate, it is unlikely that there was any need to carve them out expressly in order to preserve them.

The bottom line is that the claims against Johnson in his capacity as personal representative were

litigated in full and settled through mediation in the Probate Court, and Clark is bound by the Mediation Agreement and the order approving it, as discussed above. Clark had the opportunity to participate in the process and even to appeal the court's approval of the settlement. Obviously, the outcome of the mediation was not satisfactory to Clark, but he cannot claim he did not have notice or the opportunity to be heard. On the other hand, Johnson's defamation claims were not addressed in the probate context and have not been fully litigated. Unfair though it may seem to Clark, the fact that Johnson is entitled to summary judgment of Clark's claims does not automatically mean that Clark is likewise entitled to summary judgment in his favor on Johnson's claims. The release agreements mean what they say, and Johnson expressly reserved the right to continue to pursue his individual claims against Clark. Moreover, the doctrine of virtual representation simply does not apply to Johnson's defamation claims against Clark. Clark Motion for Summary Judgment must therefore be denied.

**IV.    CONCLUSION**

For the reasons set forth above and for good cause shown, the Court will grant Plaintiff/Counter-Defendant Johnson's Motion for Summary Judgment and dismiss the three counterclaims against Johnson. Clark's Motion for Summary Judgment, seeking dismissal of Johnson's defamation claims on the grounds that they, like Clark's own claims, were settled and released in the context of the probate proceedings, will be denied.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge