**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| DAVID P. JOHNSON, ) | |
| ) | |
|     **Plaintiff/Counter-Defendant,** ) | |
| ) | |
| v. ) | Case No. 2:03cv490-FtM-99DNF |
| ) | |
| WILLIAM ELROD CLARK, ) | Judge Thomas A. Wiseman, Jr. |
| ) | |
|     **Defendant/Counter-Plaintiff.** ) | |

**MEMORANDUM OPINION**

Before the Court is Defendant William Elrod Clark's Motion for Judgment as a Matter of Law and Alternative Motion for New Trial or for Remittitur (Doc. No. 490). Plaintiff David P. Johnson has filed his response in opposition to the motion (Doc. No. 506). For the reasons discussed below, Defendant's motion for a new trial on the issue of damages will be conditionally denied, subject to Plaintiff's acceptance of the Court's remittitur. The jury's verdict for compensatory damages will be remitted from $1,000,000 to $500,000. If he accepts the Court's remittitur, Plaintiff is to file a notice of remittitur in accordance with these terms within 30 days of entry of the Court's Order to that effect. If Plaintiff fails to accept the Court's remittitur within 30 days, a new trial will be ordered limited to the issue of damages. In all other respects, Defendants' motion will be denied, as discussed herein.

**I.    PROCEDURAL BACKGROUND**

No factual background is provided herein other than as strictly necessary for an understanding of the parties' arguments. Procedurally, this case went to trial before an eight-person jury on Plaintiff David P. Johnson's three counts of defamation (two other counts having been dismissed on summary judgment) beginning January 9, 2007. After a fourteen-day trial, the matter was submitted to the jury the morning of January 31, 2007. The jury returned a verdict the afternoon of the same day. The jury found in favor of the Defendant on Count I, and in favor of the Plaintiff on Counts II and III, and awarded actual and compensatory damages totaling $1,000,000. On the same Verdict Form, the jury indicated that it found that the Plaintiff had established by clear and convincing evidence that the statements determined to be defamatory were made with actual knowledge of the wrongfulness of the conduct; with ill will, hostility or intent to harm Plaintiff, or with

a reckless indifference to Plaintiff's rights, such that the Defendant might also be liable for punitive damages. (*See* Verdict Form, Doc. No. 471.) However, after the parties presented proof relating to punitive damages in a second trial phase, the jury declined to award punitive damages. (Doc. No. 474.) The Court entered Judgment consistent with the jury's verdict on February 5, 2007.

## II. STANDARD OF REVIEW

In his motion, Defendant invokes Rule 50(b) to renew the request for judgment as a matter of law he previously made at the close of all proof. In the alternative, Defendant moves for a new trial or for remittitur of the damages award.

### A. Motion for Judgment as a Matter of Law

In reviewing a motion under Rule 50(b), the court must look at the record evidence, drawing all inferences in favor of the nonmoving party. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004). Judgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim, which means that no reasonable jury could have reached a verdict for the plaintiff on that claim. *Id.* at 1192; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is entitled to a judgment as a matter of law [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (internal quotation marks omitted)); *Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 659 (11th Cir. 1998) ("[I]n order to survive a defendant's motion for judgment as a matter of law . . . the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim.").

Under this standard, "[a] district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1279 (11th Cir. 2005) (citation omitted). Conversely, the Court should deny the motion "if the plaintiff presents enough evidence to create a substantial conflict in the evidence on an essential element of the plaintiff's case." *Id.* (citations omitted). Of course, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[A]lthough the court should review the record as a whole, it must disregard all evidence

favorable to the moving party that the jury is not required to believe." *Id.* at 151.

While the Court must afford due deference to the jury's findings, it is axiomatic that such findings are not automatically insulated from review by virtue of the jury's careful and conscientious deliberation or detailed answers to special interrogatories. Rule 50 allows the trial court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 447 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, at 240 (2d ed.1995)). A jury verdict is not entitled to "the benefit of unreasonable inferences, or those at war with the undisputed facts." *United Fire & Cas. Ins. Co. v. Garvey*, 419 F.3d 743, 746 (8th Cir. 2005) (citation omitted).

### B. Motion for New Trial

Where alternative motions for judgment as a matter of law and for new trial are presented, the court should rule first on the motion for judgment, and "whatever his ruling thereon he should also rule on the motion for a new trial, indicating the grounds of his [or her] decision." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 253 (1940); *see also* Fed. R. Civ. P. 50(c)(1). Pursuant to Federal Rule of Civil Procedure 59(a), "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . ." Although a comprehensive list of the grounds for granting a new trial is elusive, the Supreme Court has held that a motion for a new trial may rest on the fact that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co.*, 311 U.S. at 251. Consequently, a trial judge has greater discretion in ruling on a motion for new trial than when ruling on a motion for judgment as a matter of law.

### III. DISCUSSION

### A. Defendant's Motion

As previously indicated, Defendant seeks judgment in his favor as a matter of law on Counts II and III of the Amended Complaint. With respect to Count II, premised upon statements made by Defendant in an article published on July 25, 2001 (the "July 25, 2001 Article"), Defendant contends that there is no substantial

3

evidence in the record from which a reasonable jury could have concluded that any statement made by the Defendant, as reflected in the Article, was false. In the alternative, Defendant claims that his statements were pure opinion based on facts disclosed in the Article as well as facts known or available to the general public and, as such, were not actionable. With respect to Count III, premised upon statements the Defendant made in a December 12, 2001 letter to the editor (the "Letter to the Editor"), Defendant again contends that the subject statements were "pure opinion" and therefore cannot form the basis of a claim for defamation.

In the alternative, Defendant requests a new trial on Counts II and III. As grounds for a new trial, Defendant asserts that (1) the jury's verdict is "contrary to the great weight of the evidence"; (2) certain jury instructions were erroneous and prejudicial in that they led to "substantial injustice" (Doc. No. 490, at 10, quoting *Busch v. County of Volusia*, 189 F.R.D. 687, 695–96 (M.D. Fla. 1999)); (3) Defendant was substantially prejudiced by "other writings" introduced at trial; and (4) the jury's award was excessive. Alternatively, Defendant asserts that, if a new trial is not granted, the Court should exercise its power to set aside or substantially remit the damages award. The Court will address each of these contentions in turn.

    **B.**    **Whether Defendant Is Entitled to Judgment as a Matter of Law**

        *(1)*    *Florida Defamation Law*

Under Florida law, the elements of a defamation claim include "a false and defamatory statement concerning another." *Thomas v. Jacksonville Tel., Inc.*, 699 So. 2d 800, 803 (Fla. 1st DCA 1997). This element, a false statement of fact, has been called the "*sine qua non* for recovery in a defamation action." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983), *quoted in Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006). Whether a statement is one of fact and susceptible of defamatory interpretation are questions of law for the court. *Fortson*, 434 F. Supp. 2d at 1378; *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984).

As Defendant points out, statements of pure opinion—as opposed to statements of fact—are not actionable as defamation because they are protected by the First Amendment. *Morse v. Ripken*, 707 So. 2d 921, 922 (Fla. 4th DCA 1998). The law, however, distinguishes between pure expressions of opinion, which are constitutionally protected, and mixed expressions of opinion, which, like factual statements, are not. Pure opinion occurs when the defendant makes a comment or states an opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public.

4

*From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981). Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication. *Id.* Thus, a statement is not protected as pure opinion if it implies the existence of undisclosed defamatory facts as its basis. *LRX, Inc. v. Horizon Assocs. Joint Venture*, 842 So. 2d 881, 885 (Fla. 4th DCA 2003); *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. 3d DCA 1995) (quoting Restatement (Second) of Torts § 566 (1977)); *see also Madsen v. Buie*, 454 So. 2d 727, 729 (Fla. 1st DCA 1984) (holding that statements made in a letter to the editor regarding a psychologist's behavior modification techniques were not pure opinion because the letter might reasonably be understood to imply the assertion of undisclosed facts). In addition, if the "facts" upon which the opinion is based are stated in the article, but those "facts" are either incomplete or incorrect, or the speaker's assessment of them is erroneous, the statement may imply a false assertion of fact. In that event, the statement is not protected as pure opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990); *see also Anson v. Paxson Commc'ns Corp.*, 736 So. 2d 1209, 1211 (Fla. 4th DCA 1999) (holding that false remarks on a radio talk show were not automatically shielded from liability because they were opinion).

Whether a statement is one of fact or one of opinion is a question of law. *Hay*, 450 So. 2d at 295; *From*, 400 So. 2d at 57. Likewise, whether the alleged defamatory statement consists of mixed opinion and fact is also a question of law for the Court. *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D. Fla. 1996) (citing *Fla. Med. Ctr., Inc. v. New York Post Co.*, 568 So. 2d 454, 457 (Fla. 4th DCA 1990)). Where the court finds that the statement in question is of mixed opinion and fact and reasonably capable of defamatory interpretation, then a jury issue is presented. *Stembridge*, 652 So. 2d at 446 (relying on *Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983), *overruled on other grounds by Ter Keurst v. Miami Elevator Co.*, 486 So. 2d 547 (Fla. 1986), *and* Restatement (Second) of Torts § 566, cmt c.).

### *(2) The Evidence in Support of Count II*

Plaintiff's defamation claim in Count II of his Amended Complaint was premised upon statements by Defendant printed in a July 25, 2001 Sun Herald article. The July 25, 2001 Article focused generally on unpaid real estate taxes in Virginia. Defendant argues first that publication of a false statement is an essential element of Plaintiff's claim under Florida law, and that no reasonable jury could have concluded that

Defendant Clark's statements in the July 25, 2001 Article were false. Second, Defendant contends that any statements attributable to him in the Article are statements of pure opinion which cannot give rise to liability for defamation.

*(a) Whether the Jury Could Reasonably Find that the Article Contained False Statements of Fact*

The Court finds as a matter of law that the July 25, 2001 Article contains statements of fact that are attributed or reasonably attributable to Defendant, and reasonably susceptible of a defamatory interpretation. Further, the evidence in the record supports the jury's conclusion that the statements were false. In pertinent part, the Article states:

> Bill Clark, one of the heirs to the J.V. Elrod fortune, got the shock of his life a few days ago.
>
> He received a tax notice sent out by the Prince William County, Va., Tax Collectors's Office. It said the heirs owed $588,974.30 in delinquent county property taxes. The taxes haven't been paid in four years on land once owned by his late uncle, who lived in Grove City.

(Doc. No. 490, Def.'s Ex. B.) The parties agree that the amount actually subject to delinquency notices was about $90,000, and that the amount referenced in the Article, $588,974.30, must have included the property taxes due on the Opitz property. The Opitz taxes were not technically delinquent, however, because that property had only recently been awarded back to the Elrod Estate and no delinquency notice had been issued. The statement that the Elrod heirs had received delinquent tax notices in the amount of $588,974.30 was therefore false.

Defendant argues that, although false, the statement cannot be attributed to him and he cannot be liable for defamation as a result of an error in the newspaper article that was not his fault. More specifically, Defendant testified at trial that he did not forward information about the Opitz property taxes to the reporter who wrote the July 25, 2001 Article, and that the reporter must have obtained information about the Opitz taxes from some other source.

As Plaintiff points out, however, the jury could reasonably have chosen not to believe Defendant on that point. The available evidence gives rise to a reasonable inference that Defendant spoke on the phone to the reporter in addition to faxing him copies of the delinquent tax notices, and the jury might reasonably have inferred from the available evidence that Defendant in fact included the amount owed on the Opitz property when he disclosed the amount due on the other properties. Such an inference is supported by the Article's statement that "[i]f this money is not paid, the Virginia land appraised by the county at more than $7

6

million could go to tax sale on the courthouse steps," and by the Defendant's statement of "I doubt we can raise the money to pay the delinquent taxes. . . . We just can't do it." (Doc. No. 490, Def.'s Ex. B.) The jury could reasonably have surmised that Defendant would not have expressed such despair over raising a mere $90,000 to pay off the tax bill as opposed to almost $600,000. Finally, the inference is supported by Defendant's statement that "[t]he amount of these taxes is almost exactly what Johnson has paid himself and the lawyers he's hired to defend himself against the heirs' suit." (*Id.*) It is undisputed that the amount of attorney fees paid by the Estate during the relevant time frame was much closer to $600,000 than it was to $90,000, and that the amount of fees paid to the lawyers was of great concern to Defendant.

In addition, Plaintiff presented evidence indicating that the delinquent tax notices did not come as a "surprise" to Defendant, and the jury may also have chosen not to credit Defendant's apparent statement to the newspaper reporter that he was shocked or surprised when he received them.

In short, construing all the evidence and drawing all reasonable inferences in the light most favorable to the Plaintiff, the Court finds that the evidence is sufficient to support the jury's conclusion that the article contained false and defamatory statements of fact made by the Defendant.

        *(b)*        *Whether Statements at Issue in Count II Were "Pure Opinion"*

Defendant further argues that the other statements attributed to him in the July 25, 2001 Article are pure opinion and therefore not actionable as defamation. These statements include the following:

> "I think David Johnson, the attorney for the estate, should pay these taxes. He's the one that failed to pay them," Clark said. "The amount of these taxes is almost exactly what Johnson has paid himself and the lawyers he's hired to defend himself against the heirs' suit."
>
> . . . .
>
> Clark maintains that Johnson has been derelict in handling his uncle's estate. The fact that he failed to pay the taxes on his Virginia holdings for four years, and as a consequence the land may go to tax sale, is more proof of his transgressions, Clark says.
>
> . . . .
>
> However, Clark says he hasn't pushed the issue in the courts to resolve the matter [of Robert Davis's draining Elrod's bank accounts] . . . According to Clark, the Sarasota attorney is sitting on his hands in the case, too.

(Doc. No. 490, Def.'s Ex. B.)

The first statement referenced above, prefaced with "I think," is obviously in the form of opinion, and Defendant further argues that the opinion is based upon the true fact that Plaintiff, as Personal Representative

7

and administrator of the Elrod Estate, had not paid the taxes when they became due and that he had a responsibility to pay the property taxes on tracts owned by the Estate. To the contrary, the Court finds as a matter of law that these statements by Defendant, considered in the context of the article as a whole, are mixed statements of opinion and fact.

Specifically, the first statement clearly implies an opinion that Plaintiff should be required to pay the delinquent taxes out of his own pocket rather than Estate funds, and may reasonably be interpreted to mean that Plaintiff's "failure" to pay the taxes resulted from malpractice or a dereliction of his duties as Personal Representative. As such, the opinion can reasonably be understood to imply the assertion of undisclosed facts regarding Plaintiff's mismanagement of the Estate or to rely upon erroneous facts. Evidently, the jury found that the "facts" upon which Defendant relied in support of his opinion were either incomplete or incorrect or that Defendant's assessment of Plaintiff's actions was erroneous. The Court, having also heard the evidence, finds that the jury's determination that the Plaintiff was not negligent or derelict in handling the Estate was imminently reasonable, as was the jury's determination that the Defendant's stated opinion to the contrary was either based upon an erroneous assessment of the facts or upon untrue facts.

For the same reasons, Defendant's statements that Johnson "has been derelict" in handling the Elrod Estate and that Johnson's "fail[ure] to pay taxes . . . is *more proof of his transgressions*," consist of mixed opinion as they imply the assertion of other undisclosed facts—namely, other instances in which Johnson had been derelict in his handling of the Elrod Estate. Likewise, the assertion that Plaintiff was "sitting on his hands in the case, too" implies other instances in which Plaintiff was "sitting on his hands" and neglecting his obligations as executor of the Estate.

Overall, Defendant's statements in the Article strongly imply that Plaintiff was negligent or worse in his administration of the Elrod Estate, and that the Estate was in imminent danger of losing the Virginia properties in foreclosure sales as a result of Plaintiff's mishandling of the Estate. The jury clearly found that Plaintiff had not been derelict in his duties, and that Defendant's contentions to the contrary were unreasonable. Because the Article contains mixed statements of opinion by Defendant, the Court did not err in submitting the issue of defamation to the jury, and the jury's determination that the Article was defamatory is reasonable and supported by the evidence in the record. Defendant, therefore, is not entitled to judgment as a matter of law on Count II.

### *(3)   The Evidence in Support of Count III*

With respect to the Letter to the Editor which is the subject of Plaintiff's Count III, Defendant argues that his statements are pure opinion and that the facts upon which he based his opinions, as set forth in the unedited version of the Letter to the Editor, were substantially true. Defendant also argues that he should not be found at fault for the newspaper editor's decision to excise those portions of his original letter that provided factual support for the opinions expressed in the letter.

The pertinent statements in the Letter to the Editor as published in the Sun-Herald include the following:

> The Thompson letter [to which Defendant was responding] is a good example of problems with Mr. Johnson and his stable of lawyers the past four years. Although our uncle was a millionaire, not one penny has been distributed to the family by Mr. Johnson. Meanwhile, he has paid himself and his helper attorneys close to $500,000.
>
> Property taxes are delinquent in Virginia totaling just about that amount and foreclosures are threatened on those lands. Charlotte County taxes are also in arrears. Internal Revenue Service has rejected Mr. Johnson's so-called death tax report for three years and the [E]state owes Uncle Sam $4 or $5 million, all Mr. Johnson's responsibility.
>
> Only the lawyers seem to be paid up. . . .
>
> We would not wish upon anyone the kind of representation our family has suffered at the hands of David Johnson and his lawyer-enablers. But it will happen again and again to families like ours . . . unless law enforcement, prosecutors, the Florida Bar and courts move to stop it.

(Doc. No. 490, Def.'s Ex. L.) As Defendant points out, the Letter as published was condensed from a somewhat longer original version ("Original Letter") which included some additional "facts" in support of the opinions expressed in the Letter, including as follows:

> Mr. Thompson's letter is a classic example of the 'spin' and untruths which Mr. Johnson and his stable of attorneys have used for almost four years while paying themselves right at $500,000 and distributing zero to the Elrod heirs whom they betray.
>
> . . . .
>
> [Mr. Thompson's letter] neglects to tell newspaper readers that taxes were also owed on a dozen more Prince William tracts in Todd Elrod's Estate, all of which Mr. Johnson had allowed to become delinquent by not paying one cent in property taxes in four years.
>
> . . . . David Johnson [breached his obligations to the Estate by paying taxes on property the estate didn't own]. . . . David Johnson literally paid [Michelle Davis Bonney's] tax bill out of Estate funds when foreclosure was threatened although making no claim ever that her "gift" deed [was] a fraud. (He then tried to hide that payment under vague terms in a Fl. accounting.)
>
> . . . .

9

> In conclusion, [Thompson's] letter to the editor continues a pattern that our family has come to expect from David Johnson and his cast of helpers. The IRS has not OK'd his 706 death tax accounting after almost three years and we as a family must pay the stiff penalties and interest due to his delays. IRS has also proven that Johnson has sold Elrod Estate lands to Robert Davis' own family members at prices as low as 1/7th of true market value.
>
> It is clear why lawyers have the very lowest esteem in polls of the American people. We would not wish this sort of representation on anyone! But it will continue to happen <u>so long as the Bar, prosecutors and the courts allow it to go on unchecked</u>.

(Doc. No. 490, Def.'s Ex. K.)

Defendant's contentions notwithstanding, the Court finds that the Letter to the Editor as published contains mixed opinion and fact, and that the evidence supports the jury's finding that the statements were defamatory. With respect to Defendant's argument that the Original Letter is not defamatory since it includes the facts that support Defendant's opinion, the Court finds instead that the Original Letter contains additional vitriol, and more blatantly defamatory "opinions," but the "facts" in support of the opinions either were not included in the Original Letter or were reasonably determined by the jury to be untrue. For example, it is certainly Defendant's "opinion" that Mr. Johnson had engaged in "spin," lying, and "betrayal" of the heirs, but the Original Letter either does not contain factual support for the opinion, or the "facts" upon which the opinion is based themselves might reasonably be determined to be either untrue, incomplete, or incorrectly interpreted.

The newspaper editors toned this phrase down to refer to the heirs' "problems with Mr. Johnson and his stable of attorneys over the past four years." That statement, considered in context with the letter's closure in which Defendant states he "would not wish upon anyone the kind of representation our family has suffered at the hands of David Johnson," implies undisclosed facts supporting Defendant's evident opinion that Johnson has acted unethically or even illegally and that he should be subject to punishment of some sort, be it through "law enforcement, prosecutors, the Florida bar [or] courts." (Def.'s Ex. L.) To the extent that the Original Letter outlined some of the additional facts in support of that opinion, it is clear, as discussed above, that the jury in this case concluded that Defendant's assessment of the facts giving rise to his opinions about Plaintiff were simply erroneous, or that the "facts" upon which Defendant relied in support of his opinions were not actually true.

Again, because the Letter to the Editor contains mixed statements of opinion by Defendant, the Court did not err in submitting the issue of defamation to the jury, and the jury's determination that the Letter to the

Editor was defamatory is reasonable and supported by the evidence in the record. Defendant therefore is not entitled to judgment as a matter of law on Count III.

### B.   Whether Defendant Is Entitled to a New Trial

#### *(1)   Whether the Jury's Verdict Is Contrary to the Great Weight of the Evidence*

Defendant is correct that a new trial may be granted where the Court finds that a jury verdict was "contrary to the great weight of the evidence." *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982); *see also Lipphardt v. Durango Steakhouse of Brandon*, 267 F.3d 1183, 1186 (11th Cir. 2001) ("[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.") (internal quotation mark and citation omitted).

For the reasons set forth above, the Court finds that the jury's verdict was consistent with and not contrary to the great weight of the evidence. Defendant is not entitled to a new trial on this ground.

#### *(2)   Whether Defendant Was Prejudiced by Erroneous Jury Instructions*

Defendant takes issue with three elements of the jury instructions that Defendant contends were erroneous and prejudicial. To warrant a new trial based on an erroneous jury instruction, "a party must establish that [a] challenged instruction was an incorrect statement of the law, and that it was probably responsible for an incorrect verdict leading to substantial injustice." *Busch v. County of Volusia*, 189 F.R.D. 687, 695–96 (M.D. Fla. 1999) (internal citation omitted).

Defendant's contentions concern the Court's instructions regarding (1) the affirmative defense of opinion; (2) whether proximate causation of damages is an element of Plaintiff's *prima facie* case of defamation; and (3) the itemization of damages.

##### *(a)   The Jury Instruction Regarding the Defense of Opinion*

The Verdict Form, whose language mirrored that used in the Jury Instructions, posed the following question to the jury regarding the affirmative defense of "opinion":

> With respect to each Count for which you checked "Yes" in response to Question 1 [indicating a verdict for the Plaintiff], does the preponderance of the evidence support William Elrod Clark's defense that his statements were either substantially true statements of fact, or were statements of opinion based upon true facts adequately disclosed in the publication at issue?

(Doc. No. 471, Question 2; *see also* Doc. No. 470, at 13.) The jury answered "No" to this question with respect to both Counts II and III.

11

Defendant maintains that the instruction and interrogatory were erroneous, and that the final phrase of both should have read "or were statements of opinion based upon true facts adequately disclosed in the publication at issue *or otherwise known or available to the reader or listener as a member of the public*."

As indicated above, pure opinion has been defined by Florida courts as "based upon facts that the communicator sets forth in a publication, or that are otherwise known or available to the reader . . . as a member of the public." *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984); *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981). Thus, the instruction requested by Defendant would have been erroneous in the sense that it would basically have asked the *jury* to determine whether the statements at issue were pure opinion. Here, the Court had already determined as a matter of law before submitting the issue to the jury that the statements were mixed opinion, and therefore potentially actionable.

Moreover, the phrase that Defendant sought to include in the verdict form and the jury instructions is not strictly accurate in describing mixed expressions of opinion as opposed to pure opinion. For instance, in *Hay*, the court described "mixed opinion" as "based upon facts . . . that are neither stated in the publication nor *assumed to exist by a party exposed to the communication*." 450 So. 2d at 295 (emphasis added); *cf. Smith v. Taylor County Publ'g Co.*, 443 So. 2d 1042, 1047 (Fla. 1st DCA 1983) ("Mixed expression of opinion exists when a published statement containing an opinion is made and is not based on facts set forth in the article, or assumed facts and, therefore, implies the existence of some other undisclosed facts on which the opinion is based."); *From*, 400 So. 2d at 57 ("Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication." (citing Restatement (Second) of Torts § 566)). *See also* Restatement (Second) of Torts § 566, cmt. b (noting that "[t]he assumption of the facts may come about because someone else has stated them or because they were assumed by both parties as a result of their notoriety or otherwise). Moreover, a jury may find mixed opinion to be actionable where the facts set forth to support the opinion are themselves found to be untrue. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990).

The Court finds that it would have been a correct statement of the law on mixed opinion to include the phrase "or assumed to exist by a party exposed to the communication." Notwithstanding, the exclusion

12

of that phrase—like the exclusion of the phrase "or otherwise known or available to the reader"— did not make the instruction or verdict question incorrect under the circumstances. First, the meaning of "assumed to exist" is not clear and has not been elucidated by Florida case law, nor have the parameters of "or otherwise known to the readers" been established other than in the context of a public record of arrest or conviction. *See, e.g.*, *Hay*, 450 So. 2d at 295 (fact that criminal charges had been filed against the plaintiff was a matter of public record and therefore "readily available to the reader as a member of the public"). Further, contrary to Defendant's apparent position, the Court is unaware of any cases holding that defamatory statements in published articles should be considered in the context of other articles published on prior occasions and even in different newspapers. Finally, the Defendant did not present sufficient facts from which the jury could have concluded that any facts *not* disclosed in the articles would have been "assumed to exist" by the readers or "otherwise known" to the reader as a member of the public, nor has the Defendant established the existence of *uncontroverted* facts that would support the Defendant's opinions.

Consequently, to the extent the instruction was erroneous, which the Court does not concede, Defendant was not prejudiced by the exclusion of the phrase "or otherwise known or available to the reader" and is not entitled to a new trial on this basis.

> *(b)     Whether the Jury Instructions Should Have Included Proximate Causation of Damages as an Element of Plaintiff's Prima Facie Case of Defamation*

Defendant contends the Court erred in refusing to list proximate causation of damages as an element of Plaintiff's prima facie case of defamation, citing *Cape Publications, Inc. v. Reakes*, 840 So. 2d 277, 281 (Fla. 5th DCA 2003) ("In order to recover for defamation, a plaintiff must show that damages were proximately caused by the defamatory statements.").

Defendant's position that a new trial is warranted on this ground is without merit. First, Florida law is clear that in cases of "per se" defamation brought by a private plaintiff against a non-media defendant,[1] non-economic damages may be presumed without special proof. *See, e.g.*, *Harriss v. Metropolis Co.*, 160 So. 205, 207 (Fla. 1935) ("Where a publication is false and not privileged, and is such that its natural and proximate consequence necessarily causes injury to a person in his personal, social, official, or business

---

[1]The Court concluded as a matter of law, prior to sending the matter to the jury, that the allegedly defamatory statements at issue in this case amounted to defamation "per se," which finding the Defendant has not challenged.

13

relations of life, wrong and injury are presumed or implied, and such publication is actionable per se."); *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973) (distinguishing between defamation "per se" and "per quod," and noting that the former "gives rise to an absolute presumption of both malice and damage"), *cited in Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. 2d DCA 2002).

Further, regardless of whether proximate cause of damages should have been listed as one of the elements of a *prima facie* case of defamation, Defendant was not prejudiced by any such purported error because the jury instructions included an instruction that the jury should award compensatory damages for "injury sustained as a result of the defamatory publication(s)," and that a "publication is a cause of damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage." (Doc. No. 470, at 17.)  In other words, the jury was instructed that any damages awarded must be shown to be proximately caused by the publication(s) found to be defamatory.  The fact that proximate cause was not listed an element of defamation was therefore not prejudicial.

Moreover, the jury verdict form allowed the jury to award nominal damages in the event they found that Plaintiff had proved defamation but had not proved that he suffered actual damages caused by the offending publication(s).  The jury declined to exercise that option, finding instead that Plaintiff had proved he had suffered damages caused by the publications the jury deemed defamatory.  Defendant was not prejudiced by any purported error in the jury instructions, and the motion for a new trial on this ground will therefore be denied.

### (c)     Florida Law Concerning the Itemization of Damages

Defendant also argues that the Court erred when it failed to require the jury to itemize the apportionment of damages for each Count as to which the Defendant was found liable for defamation.  The Court refused Defendant's request in this regard on the ground that it was not required by Florida law and not appropriate in the context of this particular case.

Florida law requires only that the verdict form itemize damages to indicate the amounts intended to compensate the claimant for economic losses, non-economic losses, and punitive damages, if applicable. Fla. Stat. § 768.77(1).  Such itemization is mandatory if requested by a party.  *Publix Super Markets, Inc. v. Young*, 848 So. 2d 1242, 1243 (Fla. 4th DCA 2003).  Failure properly to itemize the verdict form constitutes reversible error.  *Id.*

In this case, the jury did in fact itemize damages on the verdict form between economic and non-economic damages, denominated on the verdict form as (1) medical expenses, (2) loss of professional reputation, and (3) mental pain and suffering and loss of capacity for enjoyment of life. Defendant's contention is without merit and the motion for a new trial on this ground will be denied.

### *(3)   Whether Defendant Was Prejudiced by the Introduction of "Other Writings"*

The introduction of the "other writings," to which Defendant reiterates his objections, was necessary and permissible for the purpose of attempting to prove malice on the part of the Defendant. The Court repeatedly instructed the jury that these other writings were only to be considered for the purpose of considering whether Defendant was motivated by malice in making the statements that Plaintiff alleged to be defamatory, which were specifically limited to those publications at issue in Counts I, II and III (the July 21, 2001 Article, the July 25, 2001 Article, and the Letter to the Editor). The other writings that were admitted into evidence certainly did not include *all* Defendant's other writings that might have been introduced. All of the writings that were introduced (as well as the even more numerous documents that were not introduced into evidence) were relevant to the issue of Defendant's state of mind; the introduction of a limited number of these other writings minimized the risk of prejudice or redundancy. Further, it was the Defendant who argued initially that malice was an essential element of the Plaintiff's case.[2]

Exclusion of relevant evidence is appropriate only if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The vast majority of Defendant's writings were excluded on the grounds that to admit them all would have caused undue delay, waste of time and needless presentation of cumulative evidence. Allowing a limited number of them, sufficient to permit the Plaintiff to prove malice on the part of the Defendant, coupled with a limiting instruction by the Court repeated at intervals during the trial, did not unfairly prejudice the Defendant. Defendant's motion for a new trial on this ground will be denied.

### *(4)   Whether the Jury's Award Was Excessive*

---

[2]Defendant argued that the allegedly defamatory statements were subject to a qualified privilege. If the facts had supported that contention, Plaintiff would have been required to prove malice as an element of his claim. Regardless, malice remained relevant to Plaintiff's claim for punitive damages.

Finally, Defendant contends that he is entitled to a new trial on the issue of damages or, alternatively, remittitur of a substantial portion of the damages. In support of his argument, Defendant claims that (1) the damages award for loss of reputation was excessive, particularly given that there was no evidence that Plaintiff's reputation was actually damaged; and (2) the award for mental pain and suffering was beyond the realm of reason.

Rule 59 of the Federal Rules of Civil Procedure provides the trial court discretion to grant a new trial. While the grounds for granting a new trial are not enumerated, Rule 59(a) authorizes the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). In implementing Rule 59, courts have long recognized that a new trial may be warranted by an excessive or inadequate jury award. *Copley v. BAX Global, Inc.*, 97 F. Supp. 2d 1164, 1169 (S.D. Fla. 2000). When it is determined that the damages awarded by a jury are excessive but the finding of liability is supported by the evidence, it is appropriate to order remittitur or a new trial limited to the issue of damages. *See Wilson v. Taylor*, 733 F.2d 1539, 1549–50 (11th Cir. 1984), *overruled on other grounds by Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). A plaintiff, of course, may always choose a new trial over remittitur. *See* U.S. Const. amend. VII; *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 (11th Cir.) ("[N]o judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact."), *cert. denied*, 528 U.S. 931 (1999).

The decision whether to grant a new trial or remittitur on the grounds of excessive damages is a matter within the sound discretion of the district court. *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990). In a diversity case, the court looks to state substantive law to determine whether the verdict is excessive. *See Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1446 (11th Cir. 1991). Motions for remittitur under Florida law are governed by statute, which provides as follows:

> In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:
>
> (a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
>
> (b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or

16

> misconceived the merits of the case relating to the amounts of damages recoverable;
>
> (c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
>
> (d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
>
> (e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

Fla. Stat. § 768.74(5) (2006); *see also Spencer v. BR Contracting, Inc.*, 935 So. 2d 1289 (Fla. 5th DCA 2006). "This section did not, however, alter the 'longstanding principles' governing a trial court's deference to a jury's assessment of damages." *Aurbach v. Gallina*, 721 So. 2d 756, 758 (Fla. 4th DCA 1998) (quoting *Poole v. Veterans Auto Sales & Leasing Co.*, 668 So. 2d 189, 191 (Fla. 1996)). A court should not declare a verdict excessive merely because it is higher than the amount that the court itself considers the jury should have awarded. Rather, "[t]he verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Normius v. Eckerd Corp.*, 813 So. 2d 985, 988 (Fla. 2d DCA 2002) (quoting *Bould v. Touchette*, 349 So. 2d 1181, 1184–85 (Fla. 1977)). In that event, the verdict should be "reduced to the highest amount which the jury could have properly awarded." *Rety v. Green*, 546 So. 2d 410, 420 (Fla. 3d DCA 1989) (quoting *Lassitter v. Int'l Union of Operating Eng'rs*, 349 So. 2d 622, 627 (Fla. 1977)).

In this case, the jury awarded $50,000 for past and future medical expenses,[3] $350,000 for loss of professional reputation, and $600,000 for mental pain and suffering and loss of enjoyment of life. The Court finds the amounts awarded for damage to Plaintiff's reputation and for mental pain and suffering clearly exceed the maximum limit of a reasonable range within which the jury might operate and that the amount of the awards is indicative of prejudice or passion on the part of the jury. More specifically, the Court notes that the jury indicated in its verdict form that Plaintiff had established, with clear and convincing evidence, that the Defendant had acted with "actual knowledge of the wrongfulness of the conduct; with ill will, hostility or intent to harm [Plaintiff]; or with reckless indifference to [his] rights," such that an award of punitive damages would have been warranted. (Doc. No. 471.) After a second trial phase during which additional proof pertaining to

---

[3] Defendant has not objected to the amount awarded for medical expenses so the Court will not disturb it. In any event, the award was not beyond the realm of reason.

17

punitive damages was presented, however, the jury deliberated for a very short period of time before reaching a unanimous decision to award "$0" in punitive damages, despite also finding that the Defendant's conduct was "motivated solely by unreasonable financial gain," that "the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct was actually known by [Defendant]," and that Defendant made the defamatory statements with the specific intent to harm Plaintiff. (Doc. No. 474.) The jury's decision not to award punitive damages, despite their clear finding that such damages would have been appropriate under the facts of the case and despite undisputed proof of Defendant's financial ability to pay such an award, strongly suggests to the Court that the amount of damages awarded, ostensibly compensatory damages, actually incorporated a punitive element.

Moreover, although awards for similar types of damages in defamation/libel cases around the country range widely, the amounts awarded here for damage to reputation and mental and emotional pain and suffering are for the most part substantially higher than the amounts ordinarily awarded in comparable and recent libel/defamation cases, particularly where no proof of actual economic harm was submitted. *Cf. Tusino v. Int'l Bhd. of Teamsters*, 169 Fed. Appx. 39 (2d Cir. 2006) (reducing emotional damages award for libel from $250,000 to $100,000 where there was no medical or other objective evidence of plaintiff's damages, only plaintiff's and daughter's testimony regarding embarrassment, loss of sleep, weight and appetite); *Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354 (6th Cir. 2005) (upholding award of $400,000 compensatory damages in Fair Credit Reporting Act case involving emotional distress where there was also a showing of actual damages in the form of denial of two credit applications); *Stamathis v. Flying J, Inc.*, 389 F.3d 429 (4th Cir. 2004) (holding that a compensatory damages award of $250,000 to truck driver and against merchant for defamation and malicious prosecution was not excessive under Virginia law where the plaintiff suffered humiliation and embarrassment from being arrested, taken into custody, and booked for petit larceny due to actions of merchant, he faced further insult with respect to his relationship with his employer, and he incurred $10,000 in actual out-of-pocket loss and expenses in defending against charge against him); *Simon*, 895 F.2d at 1319–20 (remitting $1,000,000 general damages award in libel case to $250,000 as the maximum that could appropriately be awarded in general damages for impairment to reputation, humiliation and anguish, given the absence of any evidence of economic loss and given the evidence of other factors that had already damaged the plaintiff's reputation); *Alioto v. Cowles Comm'cns Inc.*, 430 F. Supp. 1363, 1372 (N.D. Cal. 1977)

(cited in *Simon*, awarding $350,000 in general damages to the plaintiff for a slanderous article impugning the plaintiff's fitness for public office, where there was evidence of severe mental and emotional distress as well as "widespread harm to his reputation" as a result of the nationwide distribution of the slanderous article), *aff'd*, 623 F.2d 616 (9th Cir. 1980), *cert. denied*, 449 U.S. 1102 (1981); *Lipsig v. Ramlawi*, 760 So. 2d 170, 175 (Fla. 3d DCA 2000) (referencing general damages award to plaintiff of $175,000 from each of three different defendants on slander claims, for a total award of $525,000, but granting remittitur on punitive damages award as unreasonable in light of the defendants' net worth); *Rety*, 546 So. 2d at 419–20 (in defamation case involving the widespread dissemination of a letter by the defendant accusing the plaintiff restaurateur of making vile antisemitic remarks, resulting in financial devastation as well as significant emotional injury to the plaintiff, the Florida court of appeals approved the remittitur of the damages verdict from $10 million to $2.5 million in compensatory damages as the highest amount a jury could reasonably have awarded). *But see Republic Tobacco Co. v. N. Atl. Trading Co.*, (7th Cir. 2004) (in a defamation per se case in which proof of actual damage was unnecessary and the plaintiff was entitled to "presumed damages," the Seventh Circuit held that remittitur from $3.36 million to $1 million was appropriate, despite the absence of proof of economic injury).

In the case at bar, Plaintiff did not present (nor, as previously indicated, was he required to present) evidence of economic harm. Contrary to Defendant's contention, however, the Court nonetheless finds that the evidence was sufficient to support more than a nominal award for damages to Plaintiff's reputation. The articles at issue were not distributed nationwide, but they were published in the local newspapers in the area within which the Plaintiff lived and worked—in other words, in the region where they could be presumed to cause the most damage to his reputation. The Court is cognizant, however, that there were other issues going on in Plaintiff's life that could have contributed to the damage to his reputation. The Court finds that the maximum amount the jury could have properly awarded for damage to Plaintiff's reputation, given the absence of evidence of economic damages and the presence of other factors contributing to the injury to his reputation, is $150,000.

With respect to the award for mental pain and suffering, the Plaintiff's evidence of emotional injury was fairly substantial and was corroborated by the testimony of his treating psychiatrist and other witnesses. The evidence was that Plaintiff, like the plaintiff with the "eggshell skull" discussed in law-school classes, was

19

relatively fragile and easily damaged by the type of attacks in which Defendant engaged. The Court disagrees with Defendant's contention that the damages award should be remitted to a "nominal" amount. With respect to Defendant's argument that Plaintiff himself attributed most of his damages to the article at issue in Count I of the Complaint, which the jury determined was not defamatory, the Court finds to the contrary that the evidence was sufficient to support the jury's conclusion that a substantial amount of Plaintiff's mental and emotional pain was ongoing and reasonably attributable to the subsequent publications that were determined to be defamatory. Given these considerations, the Court finds that the highest amount of damages properly attributable to Plaintiff's mental pain and suffering is $300,000.

Having found that remittitur is appropriate, the Court will conditionally deny Defendant's motion for a new trial on the issue of damages, subject to Plaintiff's acceptance of the remittitur. Plaintiff will have thirty days to indicate whether he agrees to the remittitur of the damages award. If he does not do so within this time frame, a new trial on the issue of damages will be ordered.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Rule 50(b) motion for judgment as a matter of law will be denied; the alternative motion for a new trial on the issue of liability will be denied; and the motion for a new trial on the issue of damages will be conditionally denied, subject to Plaintiff's acceptance of a remittitur of his total damages amount to $500,000 ($50,000 in medical expenses, $150,000 for loss of professional reputation, and $300,000 for mental pain and suffering and loss of capacity for enjoyment of life), as set forth above.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge